UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DIKE D. THOMASSEN,<br><br>    Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Respondent. | Case No.: 4:17-cv-00099-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Petitioner Dike D. Thomassen's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's denial of his application for Social Security Disability Insurance benefits and Supplemental Security Income benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

### I. ADMINISTRATIVE PROCEEDINGS

On September 22, 2013, Dike D. Thomassen ("Petitioner") protectively filed (1) a Title II application for a period of disability and Disability Insurance benefits, and (2) a Title XVI application for Supplemental Security Income benefits – in both applications, alleging disability beginning February 23, 2013. These claims were initially denied on December 4, 2013 and, again, on reconsideration on April 24, 2014. On May 14, 2014, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On October 27, 2015, ALJ B. Hobbs held a hearing in Salt Lake City, Utah, at which time Petitioner, represented by attorney Merrick

**MEMORANDUM DECISION AND ORDER - 1**

Jackson, appeared and testified. Victoria Eskinazi, an impartial medical expert, and Terri L. Marshall, an impartial vocational expert, also appeared and testified at the same October 27, 2015 hearing.

On December 10, 2015, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on December 31, 2015 and, on January 9, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action (through his current attorneys Howard D. Olinsky and Bradley D. Parkinson) on March 7, 2017, arguing that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Docket No. 1). In particular, Petitioner identifies the "issues presented for review" as: (1) "The [residual functional capacity assessment] is unsupported by substantial evidence because the ALJ failed to follow the treating physician rule and gave great weight to the different opinions of three non-examining sources"; and (2) "The credibility determination is not supported by substantial evidence." Pet.'s Brief, p. 1, 9-16 (Docket No. 15). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at p. 16; *see also* Pet. for Review, p. 2 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 2**

Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard is fluid and nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since February 23, 2013, the alleged onset date." (AR 29).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or

**MEMORANDUM DECISION AND ORDER - 4**

combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "degenerative disc disease; severe tobacco abuse; alcohol abuse in remission; right hand post-surgery numbness; degenerative disc disease of the knees bilaterally." (AR 29).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 30).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant

**MEMORANDUM DECISION AND ORDER - 5**

work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can frequently balance and can occasionally stoop, crouch, kneel and crawl. He can occasionally climb ramps or stairs, but should never climb ladders of scaffolds. He can frequently handle with the right upper extremity and he can occasionally finger with the right upper extremity. He cannot tolerate exposure to extreme cold, wetness or humidity. He should not be exposed to hazards, such as machinery and unprotected heights. He should not be exposed to extreme vibrations in his right hand. He is able to sit for one hour at a time, but then will need to stand or walk for no more than five minutes, before resuming a seated position.

(AR 30); *see also id*. at (AR 30-34).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner was unable to perform any past relevant work, but found that jobs exist in significant numbers in the national economy that Petitioner can perform, including "ride attendant," "self-service attendant," and "information clerk." *See* (AR 34-35). Therefore, based on Petitioner's age, education, and RFC, the ALJ concluded that Petitioner "has not been under a disability as defined in the Social Security Act from February 23, 2013, through the date of this Decision." (AR 35) (internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 6**

B.   Analysis

   1.   <u>The ALJ Did Not Properly Consider the Entire Record When Addressing Petitioner's Treating Physician's Opinions</u>[1]

The medical opinion of a treating physician is entitled to special consideration and weight. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). Such deference is warranted because the treating physician "is employed to cure and has a greater opportunity to know and observe the individual." *Id*. However, a treating physician's opinion is not necessarily conclusive. *See id*. at 762. If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. *See id*. A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, Petitioner's treating physician, Benjamin Blair, M.D., submitted a Residual Functional Capacity Questionnaire ("Questionnaire") on April 3, 2014, reporting that Petitioner (1) has been diagnosed with spondylolisthesis and stenosis of the lumbar spine; (2) can walk only one city block without rest or significant pain; (3) can sit for 30 minutes at one time and stand/walk for 15 minutes at one time; (4) can sit for four hours and stand/walk for three hours in an 8-hour workday; (5) needs a job that permits shifting positions at will from sitting, standing, or walking; (6) needs to take three unscheduled breaks (for 15 minutes) during an 8-hour workday; (7) can frequently lift less than 10 pounds, occasionally lift 10 pounds, and never lift

---

   [1] Although the regulations governing the evaluation of medical evidence were recently amended, the most recent version effective March 27, 2017 does not apply to the present claim. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

**MEMORANDUM DECISION AND ORDER - 7**

20 pounds or more; (8) is likely to be absent from work three or four times a month owing to his physical condition; and (9) is incapable of working an 8-hour workday, five days a week on a sustained basis. *See* (AR 470-71).

The ALJ, however, assigned these opinions "little weight," claiming that they are "not supported by the medical records" insofar as (1) "Dr. Blair does not account for [the] significant improvement that [Petitioner] experienced with treatment," and (2) "Dr. Blair . . . reported that [Petitioner] experienced drowsiness as a side effect to his pain medication[,] [h]owever [Petitioner] did not make similar complaints while undergoing treatment at multiple clinics." (AR 33). According to the ALJ, "[t]hese factors render Dr. Blair's opinion less persuasive." *Id*. Petitioner takes issue with the ALJ's conclusions in these respects, arguing that "the ALJ has failed to provide specific and legitimate reasons for rejecting the opinion of [his] treating physician, Dr. Blair, which is error." Pet.'s Brief, p. 12 (Docket No. 15). The Court agrees.

The ALJ accurately notes that, "after undergoing two epidural steroid injections at the Pain Clinic in October 2013, [Petitioner] reported that he had a dramatic improvement in his lumbar spine radicular pain, and that the pain in his hips had almost completely resolved." (AR 33) (citing (AR 430)). But this was only a temporary snap-shot of Petitioner's condition as of November 2013 (following two lumbar epidural steroid injections and preceding two thoracic epidural steroid injections). Indeed, within the same treatment note that the ALJ cited in support of her above-referenced findings, Dr. Anthony Davis (the medical provider who administered the first two lumbar epidural steroid injections and who was preparing to inject Petitioner with his first thoracic epidural steroid injection) makes specific reference to the fact that Petitioner "continues to have pain in his upper lumbar and lower thoracic spine." (AR 430). Thereafter, the medical record (which the ALJ largely ignored) indicated the following:

- December 4, 2013 (Dr. Blair): "Patient is status post epidural steroid injection at the thoracolumbar junction with excellent short-term relief of

**MEMORANDUM DECISION AND ORDER - 8**

his symptoms; *however, his symptoms are slowly recurring . . . . At this time, I belief a repeat epidural steroid injection at the thoracolumbar junction is reasonable . . . .*" (AR 394) (emphasis added).

- December 13, 2013 (Dr. Davis): "[Second] [t]horacic epidural steroid injection at T12-L1 . . . . He has received several epidural steroid injections at the pain clinic, predominantly in the lumbar spine for his complaints of lumbar spine pain with radiculopathy. Most recently, [Petitioner] received a low thoracic high lumbar injection at T12-L1, with significant improvement in his complaints of rib and thoracic spine pain. At the time of today's visit, Patient reports that his rib pain remains essentially resolved, *but he continues to have some pain in his upper lumbar and low thoracic spine*." (AR 426) (emphasis added).

- January 16, 2014 (Dr. Blair): "*Patient presents for followup with continued left lower extremity radicular pain. He states this is unchanged despite an epidural steroid injection. . . . As far as the lumbar spine is concerned, I believe it is due to continued neurologic impingement. He has failed conservative therapy and is interested in surgical treatment. I believe the next step would be myelogram, post-myelogram CAT scan to further delineate the extent of neurologic impingement.*" (AR 393) (emphasis added).

- February 14, 2014 (Dr. Blair): "Chief Complaint: Low back pain radiating to lower extremity. . . . Patient is a 49-year-old with long history of low back pain, insidious onset, *progressed to the point that is severe*, now in to get myelogram post myelogram CAT scan to further delineate cause and symptomatology." (AR 418) (emphasis added).

- February 20, 2014 (Dr. Blair): "Chief Complaint: Lumbar . . . . Patient presents for review of his myelogram, post-myelogram CAT scan of the lumbar spine . . . . Plan: Lumbar: Degenerative spondylolisthesis, L4-5, and spinal stenosis, mild, at L2 through 4 and fairly severe at L4-5. At this time, I discussed treatment options including nonoperative care. *He has failed most conservative therapy up to this point*. The other option would be surgical treatment in the form of lumbar laminectomy and associated fusion, because of the listhesis, with pedicle screw instrumentation and iliac crest bone graft. We have discussed the risks and benefits of operative therapy including the fact that despite adequate technical surgical intervention, he may remain symptomatic and there is small chance that his symptoms may actually worsen from surgery." (AR 392) (emphasis added).

The fuller record does not support the ALJ's conclusion that Dr. Blair did not take into consideration the results of Petitioner's four (not two) epidural steroid injections. In fact, he most certainly did, concluding in February 2014 (two months before his at-issue Questionnaire)

**MEMORANDUM DECISION AND ORDER - 9**

that, despite any progress as of November 2013, the injections ultimately "failed." (AR 392). Instead, it was the ALJ who overlooked this more *complete* record before rejecting Dr. Blair's opinions.[2]

Second, questioning Dr. Blair's opinions because he indicated in his Questionnaire that "drowsiness from narcotic pain medication" may result (despite Petitioner testifying that he was not taking painkillers), misses the point. (AR 33) (citing (AR 470)). Dr. Blair was simply responding to a generic question posed to him on a form, *i.e.*: "Identify the side effects of any medications which may impact their capacity for work, i.e., dizziness, drowsiness, stomach upset, etc." (AR 470). Dr. Blair did not indicate that Petitioner actually took any medications for back pain or, as the ALJ suggested, that Petitioner had complained about any medication's side-effects. Significantly, the last treatment note from Dr. Blair makes no mention of medications or any prescriptions for any medications. *See* (AR 392). But more fundamentally, the fact that Petitioner might experience a side-effect *if* he takes narcotic pain medication has nothing to do with his physical capabilities, particularly when understanding that he does not take any medication. In short, it is too much of a stretch even if not completely erroneous, to draw the distinction that the ALJ seeks to establish in this instance.

With all this in mind, it may very well be the case that Petitioner is actually not disabled and that Dr. Blair's opinions are legitimately at odds with the medical record. However, the

---

[2] To be fair, the ALJ did reference Dr. Blair's above-referenced February 14, 2014 treatment note, commenting that, at that time, Petitioner was "noted to be in no acute distress"; had normal affect and gait; no cyanosis, clubbing, or edema; and x-rays showing "only mild degenerative changes of the lumbar spine." (AR 31) (citing (AR 419 & 598)). But there is no subsequent connecting-of-the-dots between these circumstances and Petitioner's underlying "chief complaint," which Dr. Blair described during that same visit as "[severe] low back pain radiating to lower extremity." *See* (AR 419). Additionally, the ALJ's references to August 13, 2014 and June 12, 2015 treatment notes is misplaced in that neither spoke specifically to Petitioner's back issues, but, rather burns on his hands and feet and bilateral knee/patellofemoral pain. *See* (AR 32) (citing (AR 477, 479, & 576)).

**MEMORANDUM DECISION AND ORDER - 10**

ALJ's stated justification for giving "little weight" to those opinions (as a basis for her disability determination) does not represent the necessary specific and legitimate reasons for doing so. Remand is appropriate in this respect.

    2.    <u>Petitioner's Credibility</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, her determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). However, to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

As described above, the ALJ erred in his assessment of Dr. Blair's opinions. *See supra*. Hence, the Court will not address issues surrounding Petitioner credibility in great depth, considering that the ALJ's credibility determination is necessarily tethered to the medical record.

**MEMORANDUM DECISION AND ORDER - 11**

*See, e.g.*, (AR 31) ("In terms of the claimant's alleged impairments, the objective medical evidence does not support the degree of severity alleged by the claimant."). Nevertheless, the Court notes (as did the ALJ) that Petitioner's daily activities – considered in isolation – suggest that Petitioner's statements about the intensity, persistence, of functionally-limiting effects of his claimed pain or other symptoms may be less than fully credible. *See, e.g.*, (AR 32) (citing (AR 270-78) (Petitioner's self-report Function Report-Adult)); *see also* (AR 573) (June 12, 2015 "Progress Notes – Orthopedic Surgery": "He denies any specific injury or trauma, but he does a lot of hiking, hunting, fishing, kneeling, squatting. He also is on his knees a lot for his job and likes to hike and hunt in the wilderness for sport. He describes the pain in the patellofemoral joint with activities such as hiking and walking."). But, again, since the ALJ's credibility determination was made in the contextual space of the ALJ having decided to give little weight to Dr. Blair's opinions, the evidentiary landscape for questioning Petitioner's credibility has substantially changed. Hence, remand is also appropriate in this respect.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ. *See Key*, 754 F.2d at 1549.

However, the reasons given by the ALJ for rejecting Dr. Blair's opinions are not properly supported. This case is therefore remanded for reconsideration for this reason. After the ALJ reconsiders Dr. Blair's opinions, the ALJ should then reconsider the issue of Petitioner's credibility, if necessary, for the purposes of any disability determination.

# V. ORDER

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: September 10, 2018

_____
Ronald E. Bush
Chief U.S. Magistrate Judge